RYAN E. HATCH (SBN 235577)
LAW OFFICE OF RYAN E. HATCH, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Work: 310-279-5076
Mobile: 310-435-6374
Fax: 310-693-5328
Ryan@ryanehatch.com

*Attorney for Plaintiff,*
*BioZone Laboratories, Inc.*

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| BIOZONE LABORATORIES, INC.<br><br>Plaintiff,<br><br>v.<br><br>NEXT STEP LABORATORIES CORP.<br><br>Defendant. | CIVIL ACTION NO. 4:17-CV-2768<br><br>**JURY TRIAL DEMANDED**<br><br>**COMPLAINT FOR**<br>**1. Breach of Contract**<br>**2. Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114(1) and Common Law of the State of California**<br>**3. False Advertising Under 15 U.S.C. § 1125 and Common Law of the State of California**<br>**4. Unfair Competition Passing Off Under 15 U.S.C. § 1125**<br>**5. Trade Libel**<br>**6. Declaratory Relief** |

Plaintiff BioZone Laboratories, Inc. ("BioZone" or "Plaintiff") brings this Complaint against Defendant Next Step Laboratories Corp. ("NSL" or "Defendant"), alleging as follows:

**<u>PARTIES</u>**

1. Plaintiff BioZone Laboratories, Inc. is a California corporation with its principal place of business at 580 Garcia Avenue, Pittsburg, CA 94565.

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

2. Defendant Next Step Laboratories Corp. is a New York corporation with its principal place of business at 130-13 91st Avenue, Richmond Hill, NY11418. Defendant has not designated an agent for service of process, and may be served at the above address.

## JURISDICTION AND VENUE

3. This Court has jurisdiction because the subject matter of this action arises under the trademark laws of the United States, 15 U.S.C. §§ 1114, *et seq.*, 28 U.S.C. §§ 1331; and under supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over the Defendant because, among other reasons, the Defendant has established minimum contacts with the forum state of California. Defendant, directly or through third-party intermediaries, have transacted business within the state of California and particularly within the Northern District. Defendant has purposefully availed itself to the benefits of doing business in the state of California and the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

5. On information and belief, Defendant has availed itself of the benefits of doing business in the state of California by, amongst other things, entering into business transactions in the State of California, in this District, and in Contra Costa County with BioZone for the purchasing of goods.

6. Venue is proper in this District under 28 U.S.C. §§ 1391 (b)-(c) and 1400(b) because the Defendants are subject to personal jurisdiction in this District, and have transacted business with Plaintiff in this district.

## FACTUAL BACKGROUND

**BioZone's Proprietary QuSome and Inflacin Products**

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

7. BioZone manufactures and sells proprietary cosmetic and pharmaceutical materials for use in cosmetic and personal care products, nasal and ear products, and supplements.

8. One such material that BioZone manufactures and sells is a patented compound known as QuSome. QuSome is protected by BioZone's registered trademark QUSOME® and covered by BioZone's United States patents and patent applications, including U.S. Pat. Nos. 6,610,322, 6,958,160, 7,150,883, 7,718,190, 6,495,596, and 6,998,421. QuSome is a self-forming liposome that enhances the solubility and efficacy of topically-applied ingredients.

9. Another such material that BioZone manufactures and sells is a patented compound known as Inflacin. Inflacin is protected by BioZone's registered trademark INFLACIN® and covered by United States patents and patent applications, including U.S. Pat. Nos. 6,495,596 and 6,998,421. Inflacin is an anti-inflammatory molecule for use in sensitive skin products, alpha and beta hydroxy products as well as anti-aging products.

10. One of BioZone's customers is the Defendant, NSL. NSL is a provider of cosmetic ingredients for use in skin care products, cosmetic products, and body care products. On information and belief, NSL supplies a number of large cosmetics retailers, such as Estee Lauder.

**The Technology and Distribution Agreement**

11. On June 14, 2005, BioZone and NSL entered into a "Technology Distribution Agreement" (the "Agreement"), a copy of which is attached hereto as Exhibit A. There, the parties bargained for and agreed to important provisions regarding 1) how BioZone would supply NSL with chemical complexes that included QuSome and Inflacin and other materials of NSL's specification, 2) controls on NSL's distribution of those chemical complexes, 3) conditional exclusivity in certain market segments for those chemical complexes; and 4) termination.

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

12. First, in the Agreement, BioZone agreed to manufacture for NSL what the Agreement terms "Complexes." The Agreement defines Complexes as a combination of BioZone's bare Inflacin or QuSome products, plus other chemicals that NSL specifies. *See* Ex. A at ¶¶ 2-3.

13. Importantly, the Agreement does not provide for sale by BioZone to NSL of any (i) QuSome or Inflacin materials other than "Complexes"; (ii) bare QuSome or Inflacin materials absent other ingredients; or (iii) any materials other than the "Complexes." Indeed, each and every use of the term "Complex" in the Agreement refers not to QuSome or Inflacin alone, but QuSome or Inflacin mixed with other ingredients according to NSL's specifications.[1]

14. Second, NSL promised not to mark up the price of the Complexes by "more than 100% of BioZone's price." *Id.* at ¶ 4. This encourages proliferation of BioZone proprietary chemicals to customers, and ensures that BioZone receives a fair price for its products without being exploited by NSL.

15. Third, BioZone conditionally granted NSL conditional exclusive distribution rights for selling the Complexes to a limited set of customer accounts. BioZone never granted NSL any type of exclusivity over bare QuSome or Inflacin materials, a right that it has reserved to itself.

16. Lastly, BioZone was permitted to terminate the Agreement for any or no reason by providing NSL with "twelve months notice." *Id.* at ¶ 7.

---

[1] *See, e.g.*, Ex. A at ¶ 1 ("NSL will market and distribute chemical complexes developed by NSL using BioZone's 'self forming liposomes technology."), ¶ 2 ("BioZone will be responsible for manufacturing the chemical/SFLT (complex) combination . . ."), ¶ 3 ("By manufacturing the 'complexes' for NSL, BioZone confers the right to NSL…), ¶ 3 ("NSL shall not be responsible for paying any other cost or fee to BioZone other than the cost of manufacturing the complexes."), ¶ 4 ("BioZone agrees to sell QuSome Complexes and Inflacin Complexes to NSL . . . NSL agrees to markup the Complexes no more than 100% . . . if BioZone sells a Complex to NSL for $50,000, NSL will sell the Complex for no more than $100,000."), ¶ 5 ("NSL has the right to market its unique complexes . . . Sales of common/existing complexes . . . BioZone is not allowed to sell NSL developed complexes without written consent . . . NSL is granted exclusive distribution rights for selling QuSome and Inflacin Complexes to the accounts in Attachment A."), ¶ 6 ("In cases where BioZone is unable to supply complexes to NSL . . . NSL has the right to outsource the manufacturing of complexes . . .")

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

17. Equally as important as what the Agreement granted is what it did *not* grant. BioZone has never granted NSL, in the Agreement or elsewhere, any permission to use its QUSOME, INFLACIN or other trademarks, nor has BioZone has ever authorized Defendant to issue any publicity regarding the Agreement or its terms.

18. Moreover, BioZone's grant to NSL of exclusivity in its sale of the NSL-specified Complexes to certain accounts was not unconditional. Paragraph 7 states, in pertinent part, that NSL's "[f]ailure to achieve the sales objective in a reserved account is considered a breach of the exclusive territory terms of the Agreement for the exclusive reserved account."

19. On information and belief, NSL has not achieved sales objectives for the reserved accounts.

**<u>NSL's Unauthorized Markup of QuSome and Inflacin</u>**

20. Over the past few years in addition to the Complexes described in the Agreement, NSL has requested, and BioZone has supplied it, with bare QuSome and Inflacin materials. Despite the fact that the Agreement prohibits Defendant from marking up materials received from BioZone by more than 100% of the price BioZone charges, NSL has marked up the bare QuSome and Inflacin product substantially, including occasions in which it has marked up that price to almost three times the price it pays to BioZone.

21. For example, NSL has recently procured a purchase order from Estee Lauder to sell that company bare QuSome material at a price of *over* 100% more than it pays BioZone for that bare QuSome material.

22. NSL's excessive markups constitute a violation of the parties' understanding, and the terms under which BioZone supplied NSL -- which limit NSL's permitted markup to 100%. To be sure, BioZone has no obligation under the Agreement to provide bare QuSome or Inflacin to NSL. But even under NSL's

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

construction of the Agreement (that the Agreement applies to those bare materials), once BioZone did agree to supply such materials to NSL, the terms of the Agreement are incorporated into the sales contracts for those bare QuSome or Inflacin.

**<u>NSL's Unauthorized Use of BioZone's Trademarks and Misleading Advertisements</u>**

23. NSL maintains a website, located at the URL www.nextsteplab.com (the "Website"). Recent screen shots taken from the Website are attached hereto as Exhibit B.

24. On the Website and in its advertising, NSL repeatedly uses the QUSOME mark to describe products that are not produced by BioZone, including its own products. *See, e.g.*, Ex. B at 3. NSL also brazenly misrepresents and implies that it is the exclusive provider of QuSome. For example, on the Website NSL states that it "exclusively offers active ingredients prepared in QuSomes™" and that it "develops custom and exclusive QuSomes™ ingredients for specific customer needs." *Id*. NSL takes even more steps to reinforce the incorrect impression that it is the exclusive supplier of Qusome and Inflacin products. For example, NSL prefixes those product names the letters "NS," presumably referring to "Next Step." *See, e.g.*, *Id.* at 3-4.

25. By making these and other statements, NSL wrongly states and implies that it is the sole and "exclusive" source of QuSome material or the exclusive provider of active ingredients prepared in QuSome material, or that QuSome is in some sense exclusive to NSL. On information and belief, the intent and effect of NSL's misleading statements is to create the impression in customers' minds that NSL is the sole and exclusive source of QuSome products. Of course, it is not – BioZone supplies QuSomes to others besides NSL.

26. Even if NSL was authorized to use BioZone's trademarks, which it has never been, NSL has used the marks incorrectly. For example, NSL features

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

BioZone's QUSOME and INFLACIN trademark without disclosing that these marks are federally registered trademarks belonging to BioZone, rather than NSL.

27. NSL also uses QUSOME and INFLACIN marks with the incorrect "TM" label, which indicates an unregistered common law trademark right. To the contrary, and as NSL knows, QUSOME is a registered trademark.

28. NSL also uses BioZone's QUSOME and INFLACIN marks without any trademark designation, undermining BioZone's goodwill.

29. Through its false and misleading advertising and unauthorized use of BioZone's trademarks, NSL therefore seeks to insinuate itself into the position of BioZone, as the sole and exclusive supplier of proprietary QuSome and Inflacin materials, and confuse and mislead the public.

**BioZone's Termination of the Agreement**

30. After BioZone's efforts to resolve its issues with NSL fell on deaf ears, on August 16, 2016 BioZone sent a notice to NSL terminating the Agreement ("Termination Notice"). In the Termination Notice, BioZone stated that "[b]y this letter we hereby give NSL notice that the [Agreement] is hereby immediately terminated…."

31. BioZone also explained that NSL's "acts of unauthorized manufacture, printing of packaging, distribution, commercial display, advertisement, exploitation and sale of the Unauthorized Products … constitute acts of infringement of [BioZone]'s trademark(s) and other proprietary rights in and to the BioZone IP and copies thereof." *Id.* BioZone further demanded that NSL "**CEASE & DESIST** from all uses of the Unauthorized Products for any purpose…."

32. Since receiving the Termination Notice, NSL has acknowledged in writing that the Agreement expires in August 2017.

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

33. NSL has persisted in its wrongful conduct despite the fact that BioZone terminated the Agreement and demanded that NSL cease and desist from its wrongful and deceptive conduct.

**NSL's Latest Violations of the Agreement and Defamatory Statements**

34. Recently, BioZone received two purchase orders from NSL for bare QuSome (e.g. GDM-12) and Inflacin (GDS-23) materials ("Purchase Orders"). BioZone declined to accept the Purchase Orders.

35. On or around April 20, 2017, NSL informed BioZone that the QuSome material in the Purchase Orders were intended for Estee Lauder, and that Estee Lauder's requested delivery date was rapidly approaching. On information and belief, NSL informed Estee Lauder that BioZone had declined to accept the Purchase Orders.

36. Representatives of Estee Lauder contacted BioZone, by phone and through e-mails copying Defendant's chief executive officer. Estee Lauder and BioZone discussed the possibility of establishing a direct supply relationship between BioZone and Estee Lauder, for the purpose of providing Estee Lauder with BioZone's patented materials including QuSome.

37. To accommodate Estee Lauder's immediate needs, and to allow time for BioZone to complete Estee Lauder's supplier certification process, BioZone volunteered to potentially continue to supply QuSome to Estee Lauder through NSL, but only for a limited period of time.

38. It was only then that BioZone discovered NSL's latest gross violations of the parties' Agreement. BioZone was informed that NSL was selling Estee Lauder its bare QuSome material for more than 100% over the price BioZone was charging NSL.

39. On May 3, 2017, apparently flummoxed that Estee Lauder was about to discover the truth about Defendant's profiteering, NSL's CEO launched the

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

following unprovoked and libelous attack on BioZone's business and reputation, which it sent directly to an Estee Lauder executive: "I will strongly recommend that all materials from BioZone get flagged: 'Do not use in any new development' because you will continue to pose a problem." Defendant went on to write, "the only agreement in place is the one that was terminated and that is what we will legally enforce until termination date." A copy of the communication is attached hereto as Exhibit C.

40. The statement that "BioZone will continue to pose a problem" to Estee Lauder is false and injures BioZone's reputation with Estee Lauder – a very important large-scale cosmetics customer. The statement implying that, "we will legally enforce," the "only agreement" is based on the false premise that BioZone violated the Agreement, when in fact it is NSL who is in violation of the Agreement.

41. NSL's wrongful conduct has continued, necessitating the filing of this lawsuit.

42. On May 4, 2017, BioZone received a letter from NSL's legal counsel. A copy of the letter is attached as Exhibit D. In the letter, NSL makes numerous incorrect and legally indefensible contentions, including:

a. That the Agreement requires BioZone to supply the bare QuSome or Inflacin materials to Defendant, when in fact it only applies to Complexes and not bare materials;

b. That the Agreement provides or recognizes exclusive rights for NSL in any BioZone products other than such Complexes;

c. That BioZone has provided no notice of termination, when in fact it terminated the Agreement in the Termination Notice months ago in August 2016, a fact that NSL itself has repeatedly acknowledged;

d. That for BioZone to withhold from supplying to NSL bare Inflacin or QuSome would somehow violate the Agreement;

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

e. That direct communication between BioZone and Estee Lauder somehow violates the Agreement, when it is NSL itself who introduced BioZone to Estee Lauder; and

f. That BioZone's reasonable request for the Purchase Orders, a request that NSL actually agreed to, somehow violates the Agreement.

43. NSL concluded its letter with a threat to "pursue all legal remedies against BioZone for breach of the Technology Distribution Agreement" including "general and consequential damages," creating an actual case and controversy between the parties.

## FIRST CLAIM FOR RELIEF

**(Breach of Contract)**

44. BioZone restates and incorporates by reference every allegation of the preceding paragraphs.

45. Valid contracts exist between BioZone and Defendant, including the terms of the June 14, 2005 Agreement, and subsequent contracts for the sale of goods prohibiting Defendant from, among other things, marking up materials supplied by BioZone by more than 100%.

46. Defendant breached those contracts by, for example, marking up materials it received from BioZone by more than 100%.

47. Defendant further breached those contracts, for example, by failing to achieve the mutually agreeable sales objectives.

48. As a direct and proximate result of Defendant's breaches, BioZone has suffered harm and damages. By way of example only, BioZone has be damaged at least in the amount of revenue derived from Defendant's sales at a markup in excess of 100% of BioZone's price to Defendant.

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

49. This is not the only damage that BioZone has suffered, and BioZone's damages include other amounts to be determined at trial.

## SECOND CLAIM FOR RELIEF

**(Trademark Infringement Under 15 U.S.C. § 1114 and Common Law of the State of California)**

50. BioZone restates and incorporates by reference every allegation of the preceding paragraphs.

51. BioZone is the owner of the registered mark QUSOME, Reg. No. 2921099 (the "'099 QUSOME Mark"), granted by the U.S. Patent and Trademark Office ("USPTO") on January 25th, 2005.

52. The '099 QUSOME Mark is registered in classes covering "a non-medicated ingredient sold as an integral component of cosmetics and non-medicated skin care preparations."

53. With respect to the '099 QUSOME Mark, BioZone's first use in commerce occurred in 2003.

54. BioZone is the also owner of the registered mark QUSOME, Reg. No. 3151205 (the "'205 QUSOME Mark") granted by the USPTO on October 3rd, 2006.

55. The '205 QUSOME Mark is registered in classes covering "pharmaceutical preparations sold as an integral component of nutraceuticals for the treatment of pain, arthritis, sports injuries, inflammation, dry skin and dryness of mucous membranes; diabetic substances for human use, namely food supplements, dietary food supplements, dietary supplements, nutritional supplements; herbal supplements and herbal remedies for pain, arthritis, sports injuries, inflammation, dry skin and dryness of mucous membranes, allergies and vitamin or mineral deficiencies; pharmaceutical preparations, namely analgesic preparations, pharmaceutical preparations applied to the skin for treatment of pain, arthritis, sports

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

injuries, inflammation, dry skin; anti-inflammatory preparations and pharmaceutical preparations containing liposomes for use in the treatment of pain, arthritis, sports injuries, inflammation, dry skin and dryness of mucous membranes."

56. With respect to the '205 QUSOME Mark, BioZone's first use in commerce occurred in 2003.

57. BioZone is the owner of registered mark INFLACIN, Reg. No. 2791922 (the "INFLACIN Mark"), granted by the USPTO on December 9, 2003.

58. The INFLACIN Mark is registered in classes covering "Liposomes for use in the manufacture of pharmaceutical, nutraceutical, and dietary supplement products."

59. With respect to the INFLACIN Mark, BioZone's first use in commerce occurred in 2001.

60. Herein, the '099 QUSOME Mark, the '205 QUSOME Mark and the INFLACIN Mark are referred to as the "BioZone Marks."

61. Defendant, on its products, packaging, website and other marketing and advertising materials, regularly uses BioZone Marks without disclosing that the marks are federally registered trademarks of BioZone.

62. Defendant, on its products, packaging, website and other marketing and advertising materials regularly uses BioZone's Marks with the common law trademark symbol ("TM"), suggesting that the BioZone Marks are not federally registered.

63. Defendant, on its products, packaging, website and other marketing and advertising materials regularly uses BioZone's Marks without any trademark designation.

64. Defendant, on its website and other marketing and advertising materials regularly also augmented one or more of the BioZone Marks with the prefix "NS" correlating with "Next Step."

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

65. Defendant's activities alleged herein are systematic and calculated to create the impression that Defendant rather than BioZone is the origin of BioZone's QuSome ingredient.

66. Defendant has used BioZone Marks without the consent of BioZone and in a manner that is likely to cause confusion among ordinary consumers as to the origin, source, sponsorship, affiliation, or approval of the goods.

67. Defendants have without the consent of Plaintiff who is the registrant of the BioZone Marks, used in commerce a reproduction, counterfeit, copy, or colorable imitation of those registered marks in connection with the sale, offering for sale, distribution or advertising of goods and services provided by Defendants. Defendants have used the BioZone Marks in such a manner as is likely to cause confusion, mistake, or deceive.

68. Defendant's activities as stated herein constitute false designation of origin and trademark infringement in violation of 15 U.S.C. §1114(1)(a), and under the common law of the State of California.

69. Defendants' activities as alleged herein constitute a violation of 15 U.S.C. § 1114(1)(b) and under the common law of the State of California in that Defendants have, without the consent of Plaintiff who is the registrant of the BioZone Marks used in commerce a counterfeit, copy, or colorable imitation of the registered mark of Plaintiff and applied such counterfeit, copy, or colorable imitation to advertisements intended to be used in commerce, in connection with the sale, offering for sale, distribution or advertising of goods or services. Defendants have used the imitation of the BioZone Marks in such a manner as is likely to cause confusion, mistake or to deceive.

70. Defendants acts as aforesaid were committed with knowledge that the use of the BioZone Marks was intended to be used to cause confusion, mistake or to deceive.

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

71. Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116 and recovery of damages from Defendant pursuant to 15 U.S.C. § 1117. Damages recoverable are three times the actual damages sustained by Plaintiff, Defendant's profits and the costs of the action, together with Plaintiff's attorney fees or in the alternative, damages in such sum as the court may find to be just according to the circumstances of the case, or in the alternative, at the election of Plaintiff, statutory damages.

72. Upon information and belief, Defendant's wrongful activities have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to BioZone's business, reputation and goodwill in the industry. BioZone has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**

**(False Advertising Under 15 U.S.C. § 1125 and**
**Common Law of the State of California)**

73. BioZone restates and incorporates by reference every allegation of the preceding paragraphs.

74. Defendant has distributed and continues to distribute deceptive and confusing advertising, marketing materials and communications suggesting, among other things, that: 1) Defendant is an exclusive provider of bare QuSome and Inflacin materials and QuSome and Inflacin complexes or that Defendant is the exclusive provider of active ingredients prepared in QuSome material; 2) that the BioZone Marks are not federally registered trademarks of BioZone, are unregistered common law trademarks, or are not trademarked at all; 3) that Defendant has unfettered permission to use the BioZone Marks in connection with its products; 4) that the source and origin of both raw QuSome and Inflacin and QuSome and Inflacin complexes materials is Defendant instead of BioZone.

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

75. BioZone has been and will continue to be injured as the result of Defendant's false or misleading representations described in the preceding paragraphs, both through diversion of sales from itself to Defendant.

76. In addition to being literally false, Defendant's activities as described above also implicitly covey a false impression, are misleading in context, and are likely to deceive consumers.

77. Defendant's false or misleading representations as described in the preceding paragraphs were made in or were caused to enter interstate commerce by Defendant.

78. Defendant has violated 15 U.S.C. § 1125(a) in that they have on or in connection with Defendants' goods or services, used the BioZone Marks in a manner which represents a false destination of origin, false or misleading description and a misrepresentation of fact likely to cause confusion, mistake or deceive as to the affiliation, connection or association of Defendants with Plaintiff , or which is likely to cause confusion, mistake or deceive as to the origin, sponsorship, or approval of the goods, services or commercial activities of Defendants.

79. Defendants have similarly violated 15 U.S.C. § 1125(a) in that their commercial advertising or promotion using the BioZone Marks misrepresents the nature, characteristics, qualities, and origin of their goods, services, or commercial activities.

80. Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116 and recovery of damages from Defendant, pursuant to 15 U.S.C. § 1117(a).

81. Damages include, the actual damages sustained by the Plaintiff, the Defendant's profits, and the costs of the action together with Plaintiff's reasonable attorneys' fees. In the alternative, Plaintiff is entitled to recovery of damages in such sums as the Court may find just according to the circumstances of the case.

82. Defendant's wrongful activities have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to BioZone's business, reputation and goodwill in the industry. BioZone has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**

**(Unfair Competition Passing Off Under 15 U.S.C. § 1125)**

83. BioZone restates and incorporates by reference every allegation of the preceding paragraphs.

84. Defendant markets, sells, and offers for sale its own products under the BioZone Marks.

85. Defendant has distributed and continues to distribute deceptive and confusing advertising, marketing materials and communications suggesting, among other things, that: 1) Defendant is an exclusive provider of bare QuSome and Inflacin and QuSome and Inflacin complexes; 2) that Defendant is authorized to use the BioZone Marks in connection with its own products; and 3) that the source and origin of both raw QuSome and Inflacin and QuSome and Inflacin complexes materials is Defendant instead of BioZone.

86. Defendant's conduct creates a false association of the BioZone Marks with Defendant and its products, conveying the false sense that Defendant is the origin of BioZone's proprietary QuSome and Inflacin materials.

87. Defendant further propagates such deception and passing off by omitting and concealing that the BioZone Marks, including the INFLACIN Mark, are registered trademark of BioZone, and that QuSome and Inflacin are patented by BioZone and proprietary material of BioZone.

88. Defendant also misappropriates the BioZone Marks, including the INFLACIN Mark, passing off BioZone's products as its own, by throughout the

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

Website and in its other packaging and literature, augmenting the word "Inflacin" with the initials "NS" corresponding to Next Step Laboratories, or "NS INFLACIN."

89. This association is likely to cause confusion, cause mistake, or deceive as to the identity and origin of BioZone's QuSome ingredient, suggesting that Defendant is the origin of BioZone's QuSome ingredient.

**<u>FIFTH CLAIM FOR RELIEF</u>**

**(Trade Libel)**

90. BioZone restates and incorporates by reference every allegation of the preceding paragraphs.

91. Defendant has distributed, published and continues to distribute and publish untrue statements of fact, knowing such statements to be untrue, or with a reckless disregard for the truth.

92. Such statements include, but are not limited to, statements that: 1) Defendant is an exclusive provider of bare QuSome and Inflacin and QuSome and Inflacin complexes; 2) that the BioZone Marks are not federally registered trademarks of BioZone, are unregistered common law trademarks, or are not trademarked at all; 3) that Defendant is authorized to use the BioZone Marks in connection with its products; and 4) that the source and origin of both raw QuSome and Inflacin and QuSome and Inflacin complexes materials is Defendant instead of BioZone.

93. Defendant has libeled BioZone even more specifically, publishing statements that "all materials from BioZone [should] get flagged" and that BioZone products should "not [be used] in any new development' because [BioZone] will continue to pose a problem."

94. Defendant knew or should have known that third parties, including but not limited to Estee Lauder and other customers in the market for QuSome or

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

Inflacin, would act in reliance on such statements, causing BioZone to suffer financial loss.

95. By making such statements, Defendant intended to disparage BioZone.

96. By making such statements, Defendant intended to induce others not to do business with BioZone.

97. Defendant's conduct has caused BioZone pecuniary harm, including lost sales and profits, lost customers, and damage to its relationships with customers.

## SIXTH CLAIM FOR RELIEF

### (Declaratory Relief)

98. BioZone restates and incorporates by reference every allegation of the preceding paragraphs.

99. An actual case and controversy has arisen and now exists between BioZone and Defendant concerning, *inter alia*:

a. Whether the Agreement requires BioZone to supply the bare QuSome or Inflacin materials to Defendant;

b. Whether the Agreement provides or recognizes exclusive rights for NSL in any BioZone products other than such Complexes;

c. Whether BioZone has provided notice of termination under the Agreement;

d. Whether for BioZone to withhold from supplying to NSL bare Inflacin or QuSome violates the Agreement;

e. Whether direct communication between BioZone and Estee Lauder violates the Agreement;

f. Whether BioZone's request for the Purchase Orders violates the Agreement.

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

g. Whether "Complexes" under the Agreement extend to BioZone's bare QuSome or Inflacin proprietary materials, or are just those materials mixed with other ingredients that Defendant specifies;

h. Whether BioZone has breached the Agreement by declining to sell Defendant bare QuSome or Inflacin materials;

i. Whether BioZone's sales of bare QuSome or Inflacin ingredients to the accounts listed in Agreement Exhibit A would violate the Agreement;

j. Whether NSL failed to establish or failed to meet mutually agreeable sales objectives for exclusive reserved accounts listed in Agreement Exhibit A.

k. Any other issues to be shown according to proof.

100. Judicial declarations are necessary and appropriate at this time to enable the parties to ascertain their rights and their duties to each other under the parties' contract.

**PRAYER FOR RELIEF**

Wherefore, in consideration of the foregoing, Plaintiff prays for judgment against the Defendants as follows:

1. For actual and compensatory damages in an amount to be proven at trial;
2. For punitive damages sufficient to make an example of Defendants and to deter Defendants and others similarly situation from engaging in similar wrongful conduct in the future;
3. For prejudgment interest on all damages awarded at the maximum legal rate;
4. An award of Plaintiff's attorneys' fees;
5. An award of all costs in this action;
6. An order finding that the Defendants are liable for breach of contract;
7. An order finding that the Defendants are liable for trademark

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

infringement;

8. A preliminary injunction against Defendant enjoining Defendant and all of its officers, directors and personnel from:
    a. Defaming BioZone or its products or services;
    b. Advertising an association with BioZone that does not exist;
    c. Using BioZone trademarks in commerce, absent BioZone's express written permission in each case, and then only in association with BioZone's own products;
    d. Passing off Defendant's own products as BioZone's
9. An order finding that the Defendants are liable for false advertising;
10. An order finding that the Defendants are liable for trade libel;
11. A declaratory judgment confirming that:
    a. The Agreement does not require BioZone to supply the bare QuSome or Inflacin materials to Defendant;
    b. That "Complexes" under the Agreement do not encompass BioZone's bare QuSome or Inflacin proprietary materials, and are only compounds comprised of those materials mixed with other ingredients that Defendant specifies;
    c. The Agreement provides or recognizes no exclusive rights for NSL in BioZone-supplied products other than those Complexes;
    d. That BioZone has, as of August 16, 2016, provided notice of termination under the Agreement;
    e. That the Agreement does not require BioZone to supply Defendant with bare Inflacin or QuSome material;
    f. That the Agreement does not prohibit BioZone from communicating with Estee Lauder directly;

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

g. That BioZone requesting a copy of the Purchase Orders does not violate the Agreement.

h. That the Agreement places no restriction on BioZone selling any goods to the accounts listed in Agreement Exhibit A other than those Complexes;

i. That BioZone is not prohibited from selling bare QuSome or Inflacin ingredients to the accounts listed in Agreement Exhibit A; and

j. That NSL is entitled to no exclusivity with respect to exclusive reserved accounts since either it failed to establish mutually agreeable sales objectives, or failed to meet those objectives.

12. For all such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Biozone requests a trial by jury of any issues so triable by right.

Law Office of Ryan E. Hatch, PC
13323 Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel: 310-279-5076 Fax: 310-693-5328

Dated: May 12, 2017

Respectfully submitted,

By: /s/ Ryan E. Hatch

Ryan E. Hatch (SBN 235577)
Law Office of Ryan E. Hatch
13323 W. Washington Blvd., Suite 100
Los Angeles, CA 90066
Tel. 310-279-5076
Fax. 310-693-5328
Email: ryan@ryanehatch.com

Attorney for Plaintiff,
*BioZone Laboratories, Inc*.