UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIOZONE LABORATORIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NEXT STEP LABORATORIES CORP., RICHARD RIGG,<br><br>Defendants.<br><br>NEXT STEP LABORATORIES CORP.,<br><br>Counter-Claimant,<br><br>v.<br><br>BIOZONE LABORATORIES, INC., RICHARD FISCHLER,<br><br>Counter-Defendants. | Case No. 17-cv-02768-NC<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS IN PART FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 36 |

This business dispute pits two beauty product suppliers against each other in a pageant of contractual interpretation, dubious online marketing, and inflammatory emails between executives. Plaintiff BioZone Laboratories, Inc. accuses defendant Next Step Laboratories Corporation (NSL) of breaching a 2005 distribution agreement for two cosmetics products, and alleges that NSL and defendant Richard Rigg illegally advertised the products online. After the parties' longtime business relationship fell apart in 2016, BioZone asserts that Rigg, NSL's CEO, made defamatory comments about BioZone that cost BioZone a prized customer and sales.

Before the Court is NSL and Rigg's motion to dismiss BioZone's breach of contract

and trade libel claims in their entirety, and to dismiss BioZone's trademark infringement, false advertising, and unfair competition claims against Rigg. Based on the facts alleged, BioZone has laid out plausible claims for breach of contract and trade libel. It has not, however, pled facts that support its claims of trademark infringement, false advertising, or unfair competition against Rigg. NSL and Rigg's motion is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

### a. Factual Background[1]

BioZone owns patents to two proprietary cosmetic ingredients, called "QuSomes" and "Inflacin."[2] Dkt. No. 25 (First Amended Complaint ¶¶ 7–9). Under a now-terminated 2005 Technology Distribution Agreement, BioZone and NSL agreed on terms for the supply, distribution, and marketing of QuSomes and Inflacin. FAC ¶¶ 11–18; FAC Ex. A. The agreement required BioZone to produce "complexes" developed and specified by NSL consisting of QuSomes or Inflacin plus other chemicals, which NSL would then market and sell. FAC Ex. A. By its plain terms, the agreement did not require BioZone to provide NSL with bare QuSomes or Inflacin, just complexes of these ingredients. FAC Ex. A. A key provision stated that "NSL agrees to mark-up the Complexes no more than 100% of BioZone's price." FAC Ex. A.

The agreement also granted NSL "exclusive distribution rights for selling QuSomes and Inflacin Complexes" to specified customer accounts. BioZone and NSL agreed to

---

[1] BioZone attaches several documents to its complaint supporting its factual allegations. *See* Dkt. Nos. 25-1–25-4. "As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Santa Clara*, 307 F.2d 1119, 1125 (9th Cir. 2002) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). However, courts may consider "material which is properly submitted as part of the complaint." *Id.* The Court does so here.

[2] QuSomes are self-forming liposomes that improve dermal penetration of accessory topical active ingredients by encapsulating them and rendering them soluble in water or oil. Dkt. Nos. 25-1 (FAC Ex. A), 25-2 (FAC Ex. B). Inflacin reduces skin inflammation by blocking two enzymes in the inflammatory response pathway. FAC Ex. A, Ex. B.

Case No. 17-cv-02768-NC     2

establish "mutually agreeable sales objectives for its exclusive reserved accounts," and failure to achieve these objectives for an account was "considered a breach of the exclusive territory terms of the Agreement for the exclusive reserved account." FAC Ex. A.

The agreement's intellectual property clause granted NSL the right to patent unique combinations of chemicals that incorporate QuSomes, and "BioZone confers the right to NSL to exercise use of the patent." FAC Ex. A. The agreement did not address NSL's use of BioZone's trademarks for the QuSomes and Inflacin products. FAC ¶ 17, Ex. A.

BioZone was permitted to terminate the agreement with twelve months' notice to NSL. FAC ¶ 16, Ex. A. In case of termination, "BioZone will continue to supply NSL's customers at the existing price and compensate NSL . . . ." FAC Ex. A. The agreement was signed by Rigg on behalf of NSL as its president, and by Daniel Fisher for BioZone as its president. FAC Ex. A.

After the 2005 agreement was executed, BioZone sold bare QuSomes and Inflacin materials to NSL. FAC ¶ 20. NSL allegedly resold the bare products for more than 100% of the price it paid to BioZone, which BioZone asserts is a violation of the agreement. FAC ¶ 20–21.

In the lead up to this dispute, NSL advertised QuSomes and Inflacin products on its website. According to the amended complaint, NSL used the QUSOME mark to describe products that BioZone did not produce, stating for example that NSL "develops custom and exclusive QuSomes$^{TM}$ ingredients for specific customer needs." FAC ¶ 24, Ex. B. NSL also allegedly made statements that it was the exclusive supplier of QuSomes and Inflacin products, stating it "exclusively offers active ingredients prepared in QuSomes$^{TM}$" and prefixing product names with "NS" for "Next Step." FAC ¶ 24, Ex. B. According to BioZone, these advertisements violated BioZone's trademarks and falsely represented that NSL was the sole and exclusive source of these products. FAC ¶¶ 23–29.

Because BioZone believed NSL's online advertisements violated its intellectual property rights, BioZone sent NSL a notice on August 16, 2016, terminating the 2005 agreement and demanding that NSL cease and desist from further use of the QuSomes and

Case No. 17-cv-02768-NC  3

Inflacin products. FAC ¶¶ 30–31. Since BioZone sent the notice, NSL allegedly continued to market and sell the products. FAC ¶ 33.

On April 4, 2017, BioZone received two purchase orders from NSL for bare QuSomes and Inflacin materials, which BioZone declined to accept. FAC ¶ 34. Non-party Estee Lauder, the client for whom NSL placed the QuSomes purchase order, then contacted BioZone to discuss establishing a direct supply relationship. FAC ¶¶ 35–36. While awaiting Estee Lauder's supplier certification process, BioZone offered to supply Estee Lauder with QuSomes through NSL, for a limited time period. FAC ¶ 37.

During these negotiations, Rigg allegedly sent a message to Fischler and an Estee Lauder executive criticizing BioZone and its products. The statement reads, "I will strongly recommend that all materials from BioZone get flagged: 'Do not use in any new development' because you will con[ti]nue to pose a problem." FAC Ex. C. Rigg rejected BioZone's offer to supply Estee Lauder with QuSomes through NSL, saying the 2005 agreement would be "legally enforce[d] until termination date." FAC ¶ 39, Ex. C.

### b. Procedural History

BioZone brought this action against NSL alleging (1) breach of contract; (2) trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1) and California common law; (3) false advertising under 15 U.S.C. § 1125 and California common law; (4) unfair competition passing off under 15 U.S.C. § 1125; (5) trade libel; and (6) declaratory relief. NSL filed a counterclaim against BioZone and Fischler, alleging breach of contract and related claims. Dkt. No. 12. BioZone and Fischler moved to dismiss the counterclaim, Dkt. No. 22, which the Court granted as to the misappropriation of trade secrets counterclaim and otherwise denied. Dkt. No. 32. BioZone filed an amended complaint against NSL, adding Rigg as a defendant on the trademark infringement, false advertising, unfair competition, and trade libel claims. Dkt. No. 25. NSL and Rigg now move to dismiss in part the amended complaint. Dkt. No. 36. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1367. All parties have consented to the jurisdiction of a magistrate judge. Dkt. Nos. 7, 9, 27, 44.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not make detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. DISCUSSION

NSL and Rigg's motion seeks to dismiss BioZone's first cause of action for breach of contract against NSL in its entirety; its second, third, and fourth causes of action for trademark infringement, false advertising, and unfair competition, as against Rigg only; and its fifth cause of action for trade libel against both defendants in its entirety.

### a. BioZone States a Claim for Breach of Contract.

BioZone claims NSL breached two contractual duties. First, it alleges NSL marked up "materials received from BioZone" by more than 100%, in violation of the 2005 distribution agreement's limitation on markups to "no more than 100% of BioZone's price." FAC ¶ 46, Ex. A. Second, it alleges NSL "fail[ed] to achieve mutually agreeable sales objectives," in violation of the terms granting NSL exclusive territory rights over reserved accounts. FAC ¶ 47, Ex. A. NSL moves to dismiss BioZone's breach of contract

Case No. 17-cv-02768-NC 5

claim, arguing that the distribution agreement does not apply to bare QuSomes or Inflacin materials, which is what NSL marked up, and that BioZone has not and cannot identify any sales objectives that NSL failed to meet.

The first alleged breach depends on whether the 2005 distribution agreement or any other contract set a markup limit on bare QuSomes and Inflacin materials, as opposed to "complexes" of these ingredients. BioZone's complaint contradicts itself on this issue. BioZone specifically alleges that the distribution agreement barred NSL from "mark[ing] up the price of *the Complexes* by 'more than 100% of BioZone's price.'" FAC ¶ 14 (emphasis added). In the same breath, BioZone asserts that "the Agreement prohibits Defendants from marking up *materials received from BioZone* by more than 100% of the price BioZone charges," including bare materials. FAC ¶ 20 (emphasis added). In its response to NSL and Rigg's motion to dismiss, BioZone points to language in the complaint referring to "subsequent contracts for the sale of goods" other than the 2005 agreement, and it argues that the 2005 agreement "was 'modified' over a course of over ten years" of business practices to include bare QuSomes and Inflacin. Dkt. No. 39 at 4–5. BioZone argues these "subsequent contracts" or the modified 2005 agreement provide the contractual basis for its breach of contract claim.

Perhaps because they are impervious to self-forming liposomes, contracts may age with time. *See* Subsequent Conduct of Parties, 1 Witkin, Summary 11th Contracts § 772 (2017) ("Acts of the parties, subsequent to the execution of the contract and before any controversy has arisen as to its effect, may be looked to in determining the meaning."). By pleading the existence of "subsequent contracts for the sale of goods" and claiming that the parties modified the 2005 distribution agreement through subsequent conduct, BioZone offers a sufficient factual basis to infer that NSL was contractually prohibited from marking up bare QuSomes and Inflacin products by more than 100% of BioZone's price. Taking as true BioZone's allegation that NSL sold QuSomes to Estee Lauder for more than 100% of Biozone's price, BioZone plausibly states a breach of contract claim. At the motion to dismiss stage, factual allegations need only be skin-deep, so BioZone satisfies its

Case No. 17-cv-02768-NC         6

pleading requirements.

The Court need not address the second alleged breach based on sales objectives, because BioZone sufficiently states a claim based on the markup provision. NSL's motion to dismiss BioZone's breach of contract claim is DENIED.

### b. BioZone Does Not State a Claim Against Defendant Rigg for Trademark Infringement, False Advertising, or Unfair Competition.

BioZone's second, third, and fourth causes of action assert trademark infringement, false advertising, and unfair competition (passing off) under 15 U.S.C. §§ 1114, 1125 and California state common law. The claims are based on NSL's online marketing of QuSomes and Inflacin products, and are directed at both NSL and Rigg. NSL moves to dismiss these claims against Rigg, arguing that Rigg's role as CEO alone does not subject him to liability, and that BioZone has not alleged additional facts that could give rise to personal liability.

To state a claim for trademark infringement and unfair competition against Rigg personally, BioZone must plead facts showing that Rigg was a "moving, active conscious force" behind NSL's infringement. *Monsanto Co. v. Haskel Trading*, 13 F. Supp. 2d 349, 354 (E.D.N.Y. 1998) (interpreting claims under 15 U.S.C. §§ 1114, 1125); *accord Microsoft Corp. v. Suncrest Enter.*, No. 03-cv-5424-JF, 2006 WL 1329881, at *7 (N.D. Cal. May 16, 2006). Mere authority to direct the infringing behavior is not enough; personal involvement is necessary. *See Microsoft Corp.*, 2006 WL 1329881, at *7.

BioZone's complaint does not plead facts indicating that Rigg was personally involved in NSL's online marketing. Instead, the complaint more superficially asserts that "Defendants" violated the QuSomes and Inflacin marks and advertised illegally. In its opposition brief, BioZone contends that the plural reference to "Defendants" adequately implicates Rigg, and offers to amend the complaint with "more verbose allegations." Dkt. No. 39 at 7. BioZone also points out that Rigg "personally signed" the 2005 distribution agreement and that Rigg was the one who made the "unprovoked and libelous attack on BioZone's business and reputation." Dkt. No. 39 at 8.

Case No. 17-cv-02768-NC 7

1   It is not cosmetic verbiage that is lacking, but relevant facts.  Rigg may indeed have
2   signed the distribution agreement and sent Inflacin-proof inflammatory statements, but
3   neither of these acts bear on trademark infringement, false advertising, or passing off.  The
4   complaint offers no other specific facts showing that Rigg was a "moving, active conscious
5   force" behind NSL's online marketing decisions, meaning it fails to state a claim for relief
6   that is plausible on its face.  *See Monsanto*, 13 F. Supp. 2d at 354.  NSL and Rigg's motion
7   to dismiss BioZone's second, third, and fourth causes of action against Rigg is
8   GRANTED.  BioZone may eliminate the blemishes and reinvigorate the luster of its
9   complaint by amending it with additional facts about Rigg's personal involvement in
10  NSL's allegedly illegal online marketing.

### c. BioZone States a Claim for Trade Libel.

The last component of NSL and Rigg's motion seeks to dismiss BioZone's trade libel claim against both defendants.  Unlike the classic tort of libel, which is designed to protect the plaintiff's reputation, trade libel is based on pecuniary damage arising from a defendant's disparagement of a plaintiff's property.  *Leonardini v. Shell Oil Co.*, 216 Cal. App. 3d 547, 573 (1989).

Details are key.  "To successfully state a claim for trade libel or defamation, a plaintiff must allege: (1) who made the statements, (2) to whom the statements were made, (3) the time and place of publication, and (4) the substance of the statements." *NPK Indus. v. Hunter*, No. 15-cv-00811-SI, 2015 WL 5461667, at *4 (N.D. Cal. Sept. 16, 2015).  The plaintiff must also allege specific pecuniary harm by identifying "particular customers and transactions of which it was deprived as a result of the libel."  *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 109 (2004).

Read in context, BioZone's amended complaint satisfies these requirements.  The complaint alleges that Rigg, on behalf of NSL, sent an email to Fischler and an Estee Lauder executive on May 3, 2017 threatening to flag "all materials from Biozone" with the label "Do not use in any new development."  FAC ¶ 39.  These facts apply the foundation of who, what, when, and where.

Case No. 17-cv-02768-NC         8

NSL protests that Rigg's statement strikes at BioZone's reputation rather than the quality of its products, and it challenges whether BioZone adequately pleads pecuniary harm. The first argument misses the mark, because trade libel includes false or derogatory statements that target the plaintiff's "product or business," which Rigg's statement does. *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 291 (2014). The second argument fails because the facts give rise to a reasonable inference of pecuniary harm. On its face, the complaint makes only general allegations, but context bolsters its complexion. The complaint states that BioZone suffered "lost sales and profits, lost customers, and damage to its relationship with customers." FAC ¶ 97. This alone is not sufficiently specific. *See NPK Indus.*, 2015 WL 5461667, at *4 (dismissing trade libel claim where the plaintiff did not identify the particular customers or transactions it lost). However, the complaint describes Rigg's statement in the broader context of BioZone's efforts to sell QuSomes material to Estee Lauder, and it alleges that Rigg intended to induce Estee Lauder and other customers not to do business with BioZone. These allegations permit a reasonable inference that Rigg's statement deprived BioZone of a particular transaction with Estee Lauder. This is enough. *See Mann*, 120 Cal. App. 4th at 109. NSL and Rigg's motion to dismiss BioZone's trade libel claim is DENIED.

## IV. CONCLUSION

NSL and Rigg's motion to dismiss is DENIED as to BioZone's breach of contract and trade libel claims. The motion is GRANTED as to BioZone's trademark infringement, false advertising, and unfair competition claims against defendant Rigg only. These claims are DISMISSED, with leave to amend. If BioZone wishes to give its complaint a makeover, it must do so within 14 days, by December 11, 2017. No new claims or parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated: November 27, 2017

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

Case No. 17-cv-02768-NC          9